# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SAMUEL LEE PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV614 |
| | ) | |
| M.G. WOLFE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on several motions: Defendant Stephen Blair Laws' Motion for Summary Judgment (Docket Entry 71), Defendant Monty G. Wolfe's Motion for Summary Judgment (Docket Entry 74), Defendant Wolfe's Motion to Seal (Docket Entry 77), and Plaintiff Samuel Lee Patterson's "Motion for Leave to Amend Complaint to Conform to Evidence and to Identify and to Clarify Unto Matter of Fact" (Docket Entry 90). Also pending is a partial deferred ruling on Plaintiff's "Notice of Defendant's Non-Compliance in Discovery and Motion to Enforce Discovery." (Docket Entry 70.) The matters are ripe for disposition. For the reasons stated herein, the Court denies Defendant Wolfe's Motion to Seal and denies as moot the remaining of Plaintiff's discovery-related motion. Furthermore, the undersigned recommends that Plaintiff's motion to amend be denied, and Defendants' motions for summary judgment be granted.

## I.     BACKGROUND

Plaintiff initiated this action asserting several claims against law enforcement officials pursuant to 42 U.S.C. § 1983 stemming from an incident during an arrest in March 2021. (*See*

*generally* Complaint, Docket Entry 2.) Defendant Laws moved to dismiss the original Complaint and the motion was granted. (Docket Entries 15, 26, 27.) On May 3, 2024, the Court entered an order which partially vacated its previous Judgment and allowed Plaintiff's Amended Complaint to proceed against Defendant Laws in limited fashion, and as to Defendant Wolfe. (*See* Docket Entry 33; *see also* Am. Complaint, Docket Entry 31.)

In his Amended Complaint, Plaintiff alleges that on March 13, 2021, he was observed and then followed by Defendant Wolfe (former Stokes County Deputy Sheriff) while driving. (Am. Compl. at 1.)[1] Plaintiff was "very wary" of the circumstances given his prior purported excessive force encounter with Defendant Wolfe and as a result, pulled into a private drive "so as to let [Defendant Wolfe] continue down the highway." (*Id.*) Plaintiff alleges that Defendant Wolfe instead continued to follow Plaintiff, initiating his blue lights unlawfully, and Plaintiff, fearing a repeat experience with Defendant Wolfe, thereafter fled the scene. (*Id.* at 1-2.)

Plaintiff further alleges that he "drove around rural Stokes County" while being chased by law enforcement, and that when he finally stopped driving, he attempted to run from law enforcement officers on foot before being quickly "subdued and brought to the ground by [Defendant Laws of the City of King Police Department]" and other officers. (*Id.* at 2.) Plaintiff further alleges that he was beaten while being brought to the ground, and that Defendant Laws held him down after he was handcuffed and fully restrained while other officers beat him up, including being hit in the head with a blunt object. (*Id.*) Plaintiff also

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

alleges that Defendant Wolfe was one of the officers involved in Plaintiff's "detainment and apprehension" and has a history of use of excessive force. (*Id.* at 3.) Plaintiff alleges that the officers had a duty and failed to protect him against the use of excessive force. (*Id.* at 3-4, 7.)

Plaintiff further alleges that Defendant Wolfe provided false information to medical officials on the scene "further endangering [Plaintiff's] health and well-being." (*Id.* at 4-5.) Defendant Wolfe also allegedly admitted his past encounter with Plaintiff. (*Id.* at 5.) Plaintiff ultimately was treated and received six staples in his head for his "life-threatening injury." (*Id.* at 5, 8.)

In all, Plaintiff purports to challenge the lawfulness of the March 2021 encounter and his subsequent arrest. (*Id.* at 1-10.) Plaintiff further claims that he was subjected to excessive force during the arrest. (*Id.* at 2-3.) Plaintiff also seeks liability against Defendants Laws and Wolfe under the theory of bystander liability. (*Id.* at 3-4, 7.) Further, Plaintiff purports to seek a claim against Defendant Wolfe under the theory of deliberate indifference for interference with Plaintiff's medical care. (*Id.* at 4-5.) Lastly, Plaintiff asserts official capacity claims against Defendants, purportedly municipal liability for deliberate indifference with respect to hiring, training, and supervision. (*See id.* at 1, 5-7.)

Again, in the Court's May 2024 Order, the claims in the Amended Complaint particularly against Defendants Laws were limited to "an excessive force claim against [him] in his individual capacity based on actions after the plaintiff was handcuffed and restrained[.]" (Docket Entry 33 at 4.) Discovery originally commenced in this matter in July 2024 (*see* Docket Entry 37) and was thereafter extended after service was effectuated upon Defendant Wolfe. (*See* Text Order dated 10/7/2024.) Discovery was again extended after resolution of some

3

discovery disputes (*see* Docket Entry 60). Several more discovery-related motions came before the Court, including Plaintiff's "Notice of Defendant's Non-Compliance in Discovery and Motion to Enforce Discovery." (Docket Entry 70.) Defendants Laws and Wolfe also filed their pending motions for summary judgment (Docket Entries 71, 74). In June 2025, the undersigned deferred consideration of the outstanding *Monell*[2] discovery related to any official capacity claim against Defendant Wolfe. (*See* Docket Entry 86 at 7 ("[T]he undersigned finds it most appropriate to stay discovery on Plaintiff's *Monell* claim pending a ruling on the pending summary judgment motions, particularly pending the outcome of the claims against Defendant Wolfe in his individual capacity.").)

After summary judgment briefing was complete (*see* Docket Entries 82, 83, 85, 88), Plaintiff filed the pending motion for leave to amend his Complaint. (Docket Entry 90.) Defendants thereafter filed responses to said motion (Docket Entries 91, 92), and Plaintiff filed a reply. (Docket Entry 93.)

II.    **DISCUSSION**

    A. **Plaintiff's Motion to Amend**

Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b), Plaintiff seeks leave to again amend his Amended Complaint in this action to identify others involved in the March 2021 incident and "augment his current complaint to conform to the actual evidence" based on receipt of body camera footage and documentation from law enforcement. (*See* Docket

---

[2] In *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court held that municipalities and local governments may be liable for constitutional violations "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible."

4

Entry 90 at 1; *see also* Proposed Second Amended Complaint, Docket Entry 90-1.) Defendants oppose Plaintiff's motion on grounds that he cannot show good cause to amend, and Defendant Laws further argues undue delay, prejudice, and futility. (*See* Docket Entries 91, 92.)

Here, all parties suggest that Rule 16(4)'s good cause standard should be considered. (*See* Docket Entries 90, 91, 92, 93.) When a plaintiff seeks to amend the complaint after the deadline for amendments has passed, they must meet two requirements for the Court to grant their motion. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). First, the plaintiff must make a showing of good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b). *Belcher v. W.C. English Inc.*, 125 F. Supp. 3d 544, 548 (M.D.N.C. 2015); *see also Nourison Rug Corp.*, 535 F.3d. at 298. Second, even if the plaintiff meets the more rigorous good cause standard, they can only amend the pleadings if the Court grants them leave to amend or by consent under Federal Rule of Civil Procedure 15(a). *DeWitt v. Hutchins*, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004).

Here, the undersigned first concludes that Plaintiff's motion to amend requires no analysis under Rule 16(4)'s good cause standard. While a discovery order was issued in this matter, and thereafter amended on two occasions, there was no (albeit inadvertently) firm deadline set for amendments. (*See* Docket Entries 37, 60, 86; Text Order dated 10/7/2024.) Therefore, "[b]ecause the [operative] scheduling order . . . did not include a deadline to file amended pleadings, the court finds that there is no order setting a deadline to amend the pleadings in place in this case[,]" *Whitaker v. Protective Life Ins. Co.*, No. CV 6:10-2314-TMC, 2014 WL 12736154, at *1 (D.S.C. Nov. 12, 2014), and the undersigned finds Rule 16(4)'s

5

analysis inapplicable. *See Kostenko v. Ranavaya*, No. CIV.A. 5:07-CV-00462, 2008 WL 691684, at *2 (S.D.W. Va. Mar. 12, 2008) ("There is currently no scheduling order setting a firm deadline for the amendment of pleadings, therefore, Rule 16(b)'s good cause requirement is not applicable.").

The court nevertheless concludes that Plaintiff's motion to amend should be denied on grounds of undue delay and prejudice under Rule 15(a). Under Rule 15(a), leave to amend should be "freely given when justice so requires." *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (quoting Fed. R. Civ. P. 15(a)). Granting a motion to amend a complaint is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While the Fourth Circuit liberally allows amendments, "a court may deny leave to amend if the amendment is prejudicial to the opposing party, the moving party has acted in bad faith, or amendment would be futile." *Sciacca v. Durham Cnty. Bd. of Educ.*, 509 F. Supp. 3d 505, 515 (M.D.N.C. 2020). In determining whether an amendment is prejudicial to the opposing party, the Court evaluates the nature and the timing of the amendment. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). While delay alone is insufficient to deny a motion to amend, courts are more likely to find proposed amendments prejudicial to opposing parties in cases that have progressed closer towards judgment. *Id.*

Here, consideration of Plaintiff's proposed second amended complaint would cause undue delay and prejudice to Defendants and thus should be denied. This action has been pending since July 2023, and Plaintiff filed an Amended Complaint in April 2024. Discovery commenced in July 2024, and as previously mentioned, was extended for some period of time.

Case 1:23-cv-00614-CCE-JLW    Document 94    Filed 12/04/25    Page 6 of 31

Summary judgment motions were filed and briefed, and Plaintiff waited thereafter to file his motion to amend.

Plaintiff argues that he recently learned of information confirming the identity of other individuals involved and that "even though the Plaintiff had received this Video Evidence some time ago, due to the complexity of the video footage and because of the difficulty for the Plaintiff to clearly see, it has taken until now for the Plaintiff to actually view the moment when Cody Smith struck the Plaintiff with a deadly weapon." (Docket Entry 90 at 14.) However, Plaintiff had discovery, from early April of 2025 at the latest, identifying other officers on the scene (*see* Docket Entry 80-1 at 17-18), and argued in his opposition brief to Defendant Wolfe's summary judgment motion, filed on June 12, 2025, that Officers Cody Smith and Josh Mabe were involved in the alleged attack on him. (*See* Docket Entry 82 at 2.) Moreover, Plaintiff admits to receiving on May 5, 2025 and reviewing body camera footage of the incident. (*See* Docket Entry 68 at 1; Docket Entry 83 at 7.)

As a result, this calls into question Plaintiff's reasoning for the delay in seeking to amend a second time as he received all the information which he contends he required to amend since early May. Again, discovery closed on April 21, 2025, save for the additional production ordered by the undersigned (*see* Docket Entry 86), yet Plaintiff did not file his motion to amend until mid-August 2025, nearly four months thereafter and after summary judgment motions were briefed. Moreover, Plaintiff is seeking to amend his complaint over two years after this action was filed. Accordingly, allowing the amendment would cause undue prejudice and undue delay to Defendants. *See Norris v. United States*, No. 5:10-CT-3026-FL, 2013 WL 756293, at *3 (E.D.N.C. Feb. 28, 2013) (finding undue delay and undue prejudice

7

where the "[p]laintiff's third motion to amend comes subsequent to the [defendant's] motion to dismiss and approximately two and one half years after he filed the action"); *McPherson v. McCabe*, No. 5:04-CT-990-FL, 2007 WL 4246582, at *3 (E.D.N.C. Apr. 10, 2007) (finding amendment would cause undue prejudice where the plaintiff attempted to amend nearly two years after initiation of action and post-filing of summary judgment motion), *aff'd*, 241 F. App'x 963 (4th Cir. 2007); *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("[T]he further the case [has] progressed . . . the more likely it is that the amendment will prejudice the [opposing party] . . . ."). In sum, "[t]he Court is unwilling to countenance the additional delays to the efficient resolution of this case that an Amended Complaint would create, when amendment is not otherwise justified." *Norris v. PNC Bank, N.A.*, No. CV ELH-20-3315, 2022 WL 180753, at *6 (D. Md. Jan. 19, 2022). Accordingly, Plaintiff's motion to amend should be denied.

## B. Defendants' Motions for Summary Judgment

### 1. Standard

Summary judgment is appropriate when there exist no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring

8

the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Moreover, "[o]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (citations omitted). The party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

### 2. Defendant Wolfe's Motion for Summary Judgment

Defendant Wolfe moves for summary judgment on grounds that (1) Plaintiff's claims are barred in part under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Plaintiff has not stated nor established use of excessive force against Defendant Wolfe; (3) Plaintiff has not demonstrated a claim based on the theory of bystander liability; (4) any claim for deliberate indifference to a serious medical need fails a matter of law; (5) Defendant Wolfe is entitled to

qualified immunity; and (6) the official capacity claims against Defendant Wolfe also fail. (Docket Entry 75 at 8-24.)

The video evidence shows officers pursuing Plaintiff during a lengthy and dangerous high-speed chase before Defendant Laws was able to strike Plaintiff's vehicle. (*See* Ex. A to Def. Laws' Mot. for S.J., Video Timestamp at 00:00-16:50, Docket Entry 72-1[3]; *see also* Ex. B to Def. Laws' Mot. for S.J., Video Timestamp at 00:00-27:30, Docket Entry 72-2.) Defendant Wolfe originally witnessed Plaintiff driving well in excess of the posted speed limit, prompting Defendant Wolfe to pull in after him to initiate a vehicle stop. (Wolfe Decl. ¶¶ 5-8.) Since Plaintiff did not stop, the vehicle pursuit ensued and at some point, Defendant Wolfe was advised that the vehicle was registered to Plaintiff. (*Id.* ¶ 8.) Defendant Wolfe was familiar with Plaintiff. (*Id.*) The dangerous chase continued, and other officers and law enforcement agencies positioned themselves to join in (including Defendant Laws) as Defendant Wolfe terminated pursuit due to Plaintiff veering into a field before coming back on the road with no headlights activated. (*Id.* ¶¶ 9-11.) Defendant Wolfe recalls 7 to 9 officers engaged in the vehicle pursuit before Defendant Laws attempted a pitting maneuver.[4] (*Id.* ¶¶ 12-13; *see also* Laws Decl. ¶¶ 18-30.)

---

[3] The video evidence from Exhibit A is the body camera footage of Defendant Laws on the night of the incident. (*See* Declaration of Stephen Blair Laws ¶ 12, Docket Entry 71-1.) Body camera footage displayed in Exhibits B and C are non-defendant officers. (*Id.* ¶ 14.) Defendant Wolfe did not have video footage from the incident as the Stokes County Sheriff's Office was not equipped with them at that time. (Declaration of Monty G. Wolfe ¶ 19, Docket Entry 75-1.)

[4] "A PIT maneuver is an acronym for 'precision immobilization technique' and refers to a specific driving technique in which a pursuing law enforcement vehicle makes contact with a fleeing vehicle in an effort to cause it to spin to a stop." *Conley v. Grigsby*, No. 7:22-CV-00027, 2023 WL 1868228, at *2 n.3 (W.D. Va. Feb. 9, 2023) (citing *Scott v. Harris*, 550 U.S. 372, 375 (2007)). "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent

Even then, Plaintiff attempted to flee from the vehicle after it came to a rest, and Defendant Wolfe observed Plaintiff "stuff what appeared to be a bag containing a white substance into his mouth." (Wolfe Decl. ¶ 14.) As officers converged to restrain and handcuff Plaintiff, Defendant Wolfe avers that he refrained from doing so to avoid getting in the way of other officers. (*Id.* ¶ 15.) Officers were not immediately able to gain control of Plaintiff, and there was a concern of a serious threat with Plaintiff's hands and arms appearing underneath his body. (*Id.* ¶ 16; *see also* Laws Decl. ¶¶ 36-37.) While other officers continued to engage Plaintiff, Defendant Wolfe briefly examined Plaintiff's vehicle for any further threats. (Wolfe Decl. ¶ 17.) Defendant Wolfe then declares that he observed officers still continuing to struggle with Plaintiff and applying "distraction strikes" on him to gain control of him. (*Id.*)

Defendant Wolfe avers that he did not hit Plaintiff nor use any force against him on that evening. (*Id.* ¶ 18.) He explained his position during the incident based upon the video camera footage of another officer. (*See id.* ¶¶ 20-21; *see also* Ex. C, Part 2, Video Timestamp at 00:00-00:44; Ex. C, Part 3, Video Timestamp at 00:00-01:50.) Defendant Wolfe did recall witnessing another officer, Deputy Cody Smith, strike Plaintiff with what appeared to be a flashlight while officers were attempting to gain control of him. (*Id.* ¶ 20.) Defendant Wolfe was unable to see where the blow landed (*id.*) and reported what he saw to his supervisor. (*Id.* ¶ 29.) Ultimately, Plaintiff was found to be bleeding from his scalp, and something was observed in his mouth, which the officers made him spit out. (*Id.* ¶¶ 21-22; Laws Decl. ¶ 47.)

---

bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott*, 550 U.S. at 386.

11

Emergency officials were subsequently called, and the decision was made to transport Plaintiff to the hospital. (Wolfe Decl. ¶ 22; Laws Decl. ¶ 48.) Defendant Wolfe rode in the ambulance with Plaintiff, in part at the request of emergency personnel for their safety. (Wolfe Decl. ¶ 22.) Defendant Wolfe avers that he does not recall speaking with emergency personnel prior to entering the ambulance, and he replaced Plaintiff's handcuffs. (*Id.*) During the transport, Defendant Wolfe does not recall saying anything to Plaintiff. (*Id.* ¶ 23.) After arriving at the hospital, Defendant Wolfe removed Plaintiff's handcuffs and waited outside for the ambulance personnel before getting a ride back to his patrol vehicle. (*Id.* ¶¶ 23-24.)

Defendants Wolfe and Laws thereafter appeared before a state magistrate for a warrant for Plaintiff's arrest for felony fleeing to elude arrest. (*Id.* ¶ 23; *see also* Laws Decl. ¶ 49.) The magistrate found probable cause to issue the arrest warrant. (*See* Ex. D to Def. Laws' Mot. for SJ, Docket Entry 72-4; *see also* Ex. 1 to Wolfe Decl., Docket Entry 75-1 at 19-21.) Plaintiff ultimately pled guilty and was convicted of 2 felony counts of eluding arrest with a motor vehicle in violation of N.C. Gen. Stat. § 20-141.5(B) and received two consecutive sentences of 19-32 months each.[5] (*See* Ex. E to Def. Laws' Mot. for SJ, Docket Entry 72-5; *see also* Att. 3 to Def. Wolfe's Mot. for SJ, Docket Entry 75-3.) Plaintiff's criminal sentence was subsequently reduced, but his convictions remained unchanged. (*See* Att. 3 to Def. Wolfe's Mot. for SJ at 6-9.)

---

[5] Plaintiff also pled guilty to misdemeanor resisting a public officer, in violation of N.C. Gen. Stat. § 14-223.

### a. Plaintiff's claims are barred by *Heck v. Humphrey* to the extent he attempts to collaterally attack his convictions.

The undersigned first concludes that to the extent Plaintiff attempts to collaterally attack the lawfulness of the March 2021 vehicle pursuit and his arrest, his claims are barred by *Heck v. Humphrey*. *Heck* generally bars § 1983 prisoner claims which would necessarily imply the invalidity of a conviction. *See id.* at 487. Specifically, the Supreme Court held that

> when a state prisoner seeks damages in a section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* (emphasis in original). The Fourth Circuit has imposed two requirements for application of the *Heck* doctrine: (1) Judgment in the plaintiff's favor must "necessarily imply the invalidity of [a plaintiff's] conviction or sentence" and (2) "[T]he claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody." *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 197 (4th Cir. 2015) (citing *Heck*, 512 U.S. at 487).

Here, Plaintiff alleges that Defendant Wolfe's statement for initiating the vehicle stop was an "outright lie" and Plaintiff "knew for certain that [he] had broken no traffic law. . . ." (Am. Compl. at 1, 5.) However, Plaintiff states in his opposition brief that he is not challenging his conviction. (*See* Docket Entry 82 at 7.) In any event, to the extent Plaintiff attempts to undermine his convictions for felony fleeing to elude arrest as well as misdemeanor resisting

a public officer, Plaintiff may not do so without first showing that such convictions were reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 487. Plaintiff fails to do so and indeed served a lengthy period in prison for said convictions until his release in January 2025.[6] Again, Plaintiff's criminal sentence was slightly reduced, but his convictions were not overturned. (*See* Att. 3 to Def. Wolfe's Mot. for SJ at 6-9.) Therefore, because Plaintiff's convictions have not been overturned on appeal or otherwise vacated, his efforts to collaterally attack the lawfulness of the March 2021 vehicle pursuit and his arrest are barred by the *Heck* doctrine.

### b. There is no genuine issue of material fact as to whether Defendant Wolfe used excessive force.

The undersigned next concludes that there exists no genuine issue of material fact as to whether Defendant Wolfe used excessive force against Plaintiff. The Fourth Amendment secures the right "to be free from unreasonable searches and seizures." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006) (citation omitted). "The Fourth Amendment's bar on unreasonable seizures prohibits the use of excessive force by a police officer in effectuating an arrest." *Livingston v. Kehagias*, 803 F. App'x 673, 683 (4th Cir. 2020) (quoting *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019)); *Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 758 (4th Cir. 2004) ("The Fourth Amendment governs claims of excessive force during the course of an arrest, *investigatory stop*, or other 'seizure' of a person." (internal quotations and citation omitted) (emphasis in original)). "Fourth Amendment jurisprudence has long recognized that

---

[6] *See North Carolina Department of Adult Correction Offender Public Information available at* https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (searching prisoner name).

the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts employ an "objective reasonableness" standard to determine whether an officer has used excessive force violative of the Fourth Amendment. *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004); *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). Thus, "[t]he relevant question is 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.' " *Streater v. Wilson*, 565 F. App'x 208, 211 (4th Cir. 2014) (quoting *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir. 1996)).

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal quotations, bracket, and citations omitted). This list is non-exclusive as "these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "Recognizing that police officers are often forced to make split-second judgments—in circumstances that are tense . . . and rapidly evolving—[courts must] take care to consider the facts from the perspective of a reasonable officer on the scene, and avoid judging . . . with the 20/20 vision of hindsight." *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002) (internal quotations and citation omitted). Moreover, "we must consider the facts at the moment that the challenged force was employed[,]" and "view it in full context, with an eye toward the proportionality of the force

in light of all the circumstances." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (internal quotations and citations omitted).

"[E]xcessive force claims of a pretrial detainee [or arrestee] are governed by the Due Process Clause of the Fourteenth Amendment." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (internal quotations omitted). Often "[t]he point at which Fourth Amendment protections end[,] and Fourteenth Amendment protections begin is . . . murky." *Id.* Nevertheless, the Fourth and Fourteenth Amendments both examine the objective reasonableness test. *See Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 467 n.2 (2021) ("Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the 'facts and circumstances of each particular case.' " (quoting *Kingsley*, 576 at 397)); *see also Somers v. Devine*, 732 F. Supp. 3d 445, 474 (D. Md. 2024) ("The factors for assessing a Fourteenth Amendment claim for excessive force are similar to those used in assessing a Fourth Amendment excessive force claim."), *aff'd*, 132 F.4th 689 (4th Cir. 2025).[7]

Here, in considering the facts in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Defendant Wolfe's use of force, to the extent any, was objectively unreasonable. Defendant Wolfe argues that "Plaintiff's Amended Complaint fails

---

[7] The Court in *Kinglsey* set forth a non-exclusive list of considerations:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

576 U.S. at 397.

to allege specific acts by Wolfe sufficient to assert a viable claim for excessive force against him[,]" and in any event, "Wolfe expressly denies using any force against Plaintiff, [which] the body worn camera recordings of the King Police Department officers confirms that he did not." (Docket Entry 75 at 11; *see also* Wolfe Decl. ¶¶ 15-22.)

Considering the totality of the circumstances, Plaintiff's claim that it was excessive force to restrain and handcuff him after he admittedly fled from law enforcement in a vehicle and then attempted to run away on foot is contradicted by the record evidence. While the court must infer the facts favorably to Plaintiff, the non-moving party, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380; *but see also Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024) (cautioning the courts not to draw inferences and to only rely on video to discount a plaintiff's account when the video shows it is clearly false).

First, Defendant Wolfe denies hitting Plaintiff or using any force against him on that evening. (*Id.* ¶ 18.) Plaintiff has failed to forecast any evidence to create a genuine issue of material fact on this issue. *See Evans*, 80 F.3d at 962; *Anderson*, 477 U.S. at 248-49. Beyond that, "[n]o rational trier of fact could find that any of the [officers] used more force than was necessary to subdue the Plaintiff and effectuate his arrest." *Dalton v. Liles*, No. 5:19-CV-00083-MR, 2021 WL 3493150, at *7 (W.D.N.C. Aug. 9, 2021).

The video evidence illustrates officers pursuing Plaintiff during an extended, high-speed chase for over 15 minutes (*see* Ex. A, Video Timestamp at 00:00-16:50; Ex. B, Video

Timestamp at 00:00-27:30), and Plaintiff does not dispute driving at times in excess of 100 miles per hour, driving in the opposing lane of traffic, abruptly braking, running red lights and stop signs, driving without headlights on dark and rural roads, nearly hitting other individuals, and refusing to stop for law enforcement, causing Defendant Laws to attempt to immobilize Plaintiff's vehicle to avoid a continuing threat to the general public.  (*See* Laws Decl. ¶¶ 15-22; Wolfe Decl. ¶¶ 6-11.)  Plaintiff pled guilty to two counts of eluding arrest with a motor vehicle, thus the crimes at issue were severe given their nature.  *See Mulder v. Norton*, No. 5:13-CV-574-F, 2016 WL 3566655, at *9 (E.D.N.C. June 24, 2016) ("[F]leeing in a vehicle at high speeds to avoid law enforcement, swerving at other vehicles and driving erratically as Plaintiff did here presented a dangerous situation.").  Moreover, given Plaintiff's behavior during the incident, it was not unreasonable for officers to believe that he was a threat to them and to the public at large.

It is undisputed that physical force was used while trying to restrain Plaintiff.  (*See* Laws Decl. ¶¶ 36-37, 39; Wolfe Decl. ¶ 17.)  While Plaintiff's version of the events renders him "completely non-threatening and non-resistant," (Docket Entry 82-3 at 1), "he fails to acknowledge the larger factual context—that he had just led multiple officers on a [lengthy and dangerous] vehicle chase."  *Graham v. Cox*, No. CV ELH-18-221, 2019 WL 1427860, at *13 (D. Md. Mar. 29, 2019).  Therefore, while not "the most gentle means to effectuate the arrest," *id*,  the actions of forcibly pulling Plaintiff to the ground in the midst of him fleeing from his vehicle after a vehicle chase, deploying a few distraction strikes, and even assuming one hit with a blunt object upon Plaintiff who is continuing to resist is not objectively unreasonable given the threat of danger by on who admittedly led officers on a lengthy high-

speed chase, and could have possessed a weapon.  (*See* Laws Decl. ¶ 37 ("I was unsure if Plaintiff was reaching for a weapon. I was also aware of Plaintiff's prior reckless and assaultive conduct . . . ."); Wolfe Decl. ¶ 8 (familiarity with Plaintiff's lengthy criminal history and unsuccessful attempt to serve notice of hearing regarding 50(b) Domestic Violence Protective Order earlier during the date of the incident); *see also Graham*, 2019 WL 1427860, at *13  ("[I] is difficult to see how forcibly pulling plaintiff from the vehicle after a vehicle chase would be excessive, given the possibility of danger suggested by one who has led police on a vehicle chase and who might have been armed.").)

Indeed, "[w]hen an individual is believed to be a threat based on objective evidence, or when a suspect is violently resisting, courts have found that officers who punched or kicked the individual in order to restrain him did not engage in excessive force." *Mulder*, 2016 WL 3566655, *8-9 (citations omitted) (granting summary judgment in favor of defendant officers who allegedly pulled, hit, kicked and used "other blunt objects" in restraining Plaintiff after he led officers on a high-speed chase and refused to submit to being handcuffed).  Plaintiff has proffered no evidence disputing the record setting forth the high-speed chase, his admitted attempt to flee the vehicle after the car stopped, and his continuous resistance during officers' attempts to restrain and handcuff Plaintiff.  (*See Bostic v. Rodriguez,* 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009) (citation omitted) ("[T]o the extent plaintiffs' recollection and the video are inconsistent, the video 'speak[s] for itself,' and the court considers the facts as displayed in the video."); *Newsaun v. Shirley*, No. 5:21-CT-3124-FL, 2024 WL 1200282, at *2 (E.D.N.C. Mar. 20, 2024) ("Plaintiff's responses to the motion for summary judgment are insufficient to create a triable issue of fact because they do not include sworn testimony such as verified affidavits

19

or declarations, or other documentary evidence supporting his claims.").) Therefore, summary judgment should be granted in favor of Defendant Wolfe as to a claim of excessive force during the restraint and arrest of Plaintiff.[8]

> **c. There is no genuine issue of material fact as to whether Defendant Wolfe failed to intervene while other officers engaged in excessive force.**

The undersigned next concludes that there exists no genuine issue of material fact as to whether Defendant Wolfe failed to intervene while other officers engaged in excessive force. The Fourth Circuit has held that "bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 203 (4th Cir. 2002). Thus, "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204 (footnote omitted).

Here, as discussed above, the undersigned concludes that there is no genuine issue of material fact as to whether excessive force was used. That is, no reasonable jury could find that the officers' actions were objectively unreasonable during Plaintiff's arrest. Thus, with no underlying constitutional violation, bystander liability fails. *See Dodson v. Prince George's Cnty.*, No. JKS 13-2916, 2016 WL 67255, at *3 (D. Md. Jan. 6, 2016) (unpublished) ("Because the excessive force claim fails, the failure to intervene claim also fails."); *see also Marshall v. Odom*,

---

[8] To the extent Plaintiff claims Defendant Wolfe engaged in use of excessive force after he was handcuffed and restrained, his claim fails for the same reasons discussed as to Defendant Laws. Essentially, the video evidence clearly contradicts Plaintiff's version of facts regarding any use of force after Plaintiff was handcuffed.

156 F. Supp. 2d 525, 531 (D. Md. 2001) ("In the absence of any underlying use of excessive force against ... [p]laintiff, liability cannot be placed on ... [defendant] for failing to intervene....").

Moreover, even assuming arguendo that excessive force was used against Plaintiff, there is no evidence that Defendant Wolfe had the opportunity to intervene. Even as to the strike by Deputy Smith with what appeared to be a flashlight, Defendant Wolfe avers that he was approximately 10 yards away and could not intervene. (Wolfe Dcel. ¶ 29.) Plaintiff contends that video evidence confirms that Defendant Wolfe "did have ample time, space and ability to stop . . . and should have prevented any attack against the Plaintiff." (Docket Entry 82-3 at 4.) However, the video evidence reflects that matters unfolded rapidly once Plaintiff's vehicle came to a stop. (*See* Ex. A, Video Timestamp at 16:48-17:14; Ex. B, Video Timestamp at 27:28-28:15.) Thus, the record does not indicate that there was a period of time which would provide Defendant Wolfe a reasonable opportunity to prevent an unlawful strike, if at all, upon Plaintiff. *See Harper v. Blagg*, No. 2:13-CV-19796, 2015 WL 6509131, at *14 (S.D.W. Va. Oct. 28, 2015) ("The record does not indicate that there was any period of time between these bursts of pepper spray that would provide a reasonable opportunity for Defendants Clifford or McCloud to prevent further harm to Plaintiff."); *N. C. ex rel. Hailey v. Westmoreland*, 267 F. Supp. 2d 497, 502 (M.D.N.C. 2003) (finding that "any striking, if it occurred at all, occurred without warning and was very brief in nature" and "[t]oo brief, in fact, for [bystanding officer] to have reacted and stopped [other officer]"). Therefore, Defendant Wolfe should be granted summary judgment on Plaintiff's claim based on the theory of bystander liability.

21

### d. There is no genuine issue of material fact as to whether Defendant Wolfe was deliberately indifferent to any serious medical need.

The undersigned next concludes that there exists no genuine issue of material fact as to whether Defendant Wolfe was deliberately indifferent to any serious medical need. Plaintiff's allegations surrounding a deliberate indifference claim are grounded in what he believes was false information provided to medical personnel endangering his health. (*See* Am. Compl. at 4-5.) The Due Process Clause of the Fourteenth Amendment may require police officers "to provide medical care to persons . . . who have been injured while being apprehended by the police." *Martin v. Seabolt*, No. 1:21CV906, 2023 WL 3074718, at *6 (M.D.N.C. Apr. 25, 2023) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "While the precise scope of this obligation is unclear, [the United States Court of Appeals for the Fourth Circuit has] held that a pretrial detainee makes out a due process violation if he shows deliberate indifference to serious medical needs." *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). To establish a deliberate indifference claim, Plaintiff must demonstrate

> (1) [he] had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Under this standard, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable,':

that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* (parallel citations omitted).

Considering the facts in light most favorable to Plaintiff, his own allegations and his medical records dispel any claim that Defendant Wolfe delayed or denied him access to medical care. First, Plaintiff admits that "[t]he EMT on the scene rushed [him] to Baptist Hospital due to [his] injury." (Am. Compl. at 4.) Upon arriving at the hospital, Plaintiff further admits that he was treated for a head injury, including image testing. (*Id.* at 5.) Moreover, Plaintiff's medical records confirm that he was diagnosed with a 3 centimeter laceration to his scalp and an abrasion to his right shoulder. (*See* Att. 2 to Def. Wolfe's Mot. for SJ at 1-14, Docket Entry 76-2.) He received 6 staples. (*Id.* at 3.) CT scans and x-rays were performed with no abnormalities. (*Id.*) Upon his departure, Plaintiff expressed "no concerns." (*Id.* at 4.)

In light of such, no reasonable jury could find that Defendant Wolfe violated Plaintiff's due process rights by delaying or denying him access to medical care because Plaintiff's own admissions and the record demonstrate that Plaintiff received prompt and adequate medical care following his arrest. Therefore, Plaintiff is unable to show that Defendant Wolfe "acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Short*, 87 F.4th at 611. Plaintiff argues that Defendant Wolfe provided false information to emergency personnel regarding the nature and cause of Plaintiff's injury which impacted his medical treatment. (*See* Docket Entry 82-3 at 5; *see also* Docket Entry 82 at 11; Docket Entry 82-2.) Specifically, Plaintiff contends that Defendant Wolfe

> told the EMT on the scene with his own mouth that the Plaintiff had "wrecked his vehicle and hit his head on the steering wheel"

as the nature and cause of his injury. . . This is THE ONLY REASON the EMT and Baptist Hospital have a "<u>Motor Vehicle Collision</u>" inscribed on their records as the cause of the Plaintiff's severe injury.

Docket Entry 82 at 11. However, Plaintiff's claim is inconsistent with the incident narrative from Stokes County emergency personnel which fails to mention Plaintiff hitting his head on the steering wheel. (*See* Att. 2 to Def. Wolfe's Mot. for SJ at 1-14 at 11.) More importantly, even if Defendant Wolfe made some verbal statements that were misleading, Plaintiff's own admissions and the record demonstrate that Plaintiff nevertheless received prompt and adequate medical care; that is, treatment for injuries including his head which involved closure of his scalp laceration with staples and further examination through CT scans and x-rays.

Ultimately, the record reflects that there exists no genuine issue of material facts as to whether Defendant Wolfe was deliberately indifferent to any serious medical need. There was neither a delay nor denial of treatment by Defendant Wolfe's purported misleading statements. Rather, Plaintiff received prompt and adequate medical care. Therefore, Defendant Wolfe should be entitled to summary judgment on this claim.

### e. Defendant Wolfe is entitled to qualified immunity.

Alternatively, Defendant Wolfe argues that he is entitled to qualified immunity. (Docket Entry 75 at 17-18.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from

24

personal-capacity liability for civil damages under § 1983[.]").  Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation."  *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right.  Therefore, the undersigned concludes that Defendant Wolfe is entitled to qualified immunity.  *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (holding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

### f. Plaintiff's official capacity claim against Defendant Wolfe should be dismissed.

Defendant Wolfe also argues that to the extent sued in his official capacity, such claims also fail.  (*See* Docket Entry 75 at 18-23.)  Municipal liability may be established under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  The undersigned previously "stay[ed] discovery on Plaintiff's *Monell* claim pending a ruling on the pending summary judgment motions, particularly pending the outcome of the claims against Defendant Wolfe in his individual capacity."  (Docket Entry 86 at 7.)  As stated above, the undersigned concludes that Defendant Wolfe is entitled to summary judgment as to the claims against him in his individual capacity.  Where "there are no underlying constitutional violations by any individual, there can be no municipal liability."  *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999); *Johnson v. Baltimore Police Dep't*, 500 F. Supp.

3d 454, 459 (D. Md. 2020) ("It is axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee.") (internal quotations and citation omitted). Therefore, Defendant Wolfe should be granted summary judgment on this issue.[9]

### 3. Defendant Laws' Motion for Summary Judgment

#### a. There exists no genuine issue of material fact as to whether Defendant Laws used excessive force.

The undersigned next concludes that there exists no genuine issue of material fact as to whether Defendant Laws used excessive force against Plaintiff. Again, Plaintiff's claim against Defendant Laws is limited to whether excessive force was used "based on actions after the plaintiff was handcuffed and restrained[.]" (Docket Entry 33 at 4.)

Here, in considering the facts in the light most favorable to Plaintiff, there is no genuine issue of material fact as to whether Defendant Laws' use of force was objectively unreasonable. Again, officers were pursuing Plaintiff during an extended, dangerous high-speed chase. After the vehicle came to a stop, Plaintiff admittedly made further efforts to flee before quickly being taken to the ground by Defendant Laws. (*See* Laws Decl. ¶¶ 33-34; *see also* Am. Compl. at 2.) While Plaintiff was actively resisting arrest and unsure if Plaintiff was reaching for a weapon, Defendant Laws admits to delivering a knee strike to Plaintiff's side and two to three more to his back and shoulder in an effort to secure Plaintiff's left arm for placement in handcuffs. (Laws Decl. ¶¶ 36-37.) Other officers were present to assist, and Plaintiff was subsequently handcuffed. (*Id.* ¶¶ 39-41; Ex. B, Video Timestamp at 27:30-28:10.)

---

[9] The undersigned will deny as moot any further discovery on this issue.

What happens next is at the center of Plaintiff's claim against Defendant Laws. Plaintiff alleges that he was beaten by Defendant Laws after being handcuffed and restrained, possibly at this point being hit in the head with a deadly weapon. (Am. Compl. at 2.) However, Defendant Laws avers that after Plaintiff was handcuffed, "all the officers who had been struggling with Plaintiff backed away" and he did not observe any use of force on that point. (Laws Decl. ¶¶ 42, 46.) Defendant Laws did turn Plaintiff on his side and observed "a white powder caked around his mouth" signaling what appeared to be an illegal drug which Plaintiff attempted to consume in an effort to conceal the drugs. (*Id.* ¶ 47.)

In his opposition to Defendant Laws' motion for summary judgment, Plaintiff contends that the video evidence confirms that officers used excessive force during his arrest as "Plaintiff was being completely non[-]threatening and non[-]resistant when [he] was being attacked[.]" (*See* Docket Entry 83 at 9; *see also id.* at 7-9.) However, the video evidence disproves any assertion that force was used on Plaintiff after he was restrained and in handcuffs. In that regard the video evidence depicts—after a lengthy and dangerous vehicle pursuit and stop of Plaintiff's vehicle—Defendant Laws approaching and coming in contact with Plaintiff who was then attempting to flee from the vehicle. (Ex. A, Video Timestamp at 00:00-16:55; *see also* Ex. C, Part 2, Video Timestamp at 00:00-00:30.) Officers are observed striking Plaintiff during which time the words, "put your hands behind your back" are repeatedly being yelled out. (Ex. A, Video Timestamp at 16:55-17:16; Ex. C, Part 2, Video Timestamp at 00:28-00:45.) While Plaintiff claims that the "beating persisted" after he was handcuffed (Am. Compl. at 2), the video evidence does not support such allegation. (*See* Ex. B, Video Timestamp at 27:30-30:58; *see also* Ex. C, Part 3, Video Timestamp at 00:00-02:17;

27

*Scott,* 550 U.S. at 378; *Bostic,* 667 F. Supp. 2d at 605.)  Therefore, because the record including the video evidence clearly contradicts Plaintiff's version of facts regarding Defendant Laws' use of excessive force after Plaintiff was handcuffed and instead demonstrates that there is no genuine issue of material fact that exists as to whether Plaintiff was subjected to excessive force, Defendant Laws' motion for summary judgment should be granted on this issue.

> **b.  There exists no genuine issue of material fact as to whether Defendant Laws failed to intervene while other officers engaged in excessive force.**

The undersigned next concludes that there exists no genuine issue of material fact as to whether Defendant Laws failed to intervene while another officer engaged in excessive force.  As discussed above, the undersigned concludes that the video evidence clearly contradicts Plaintiff's version of the story as it relates to excessive force after Plaintiff was handcuffed.  That is, once Plaintiff was secured in handcuffs, no further force is used by any officers.  (*See* Ex. B, Video Timestamp at 27:30-30:58; *see also* Ex. C, Part 3, Video Timestamp at 00:00-02:17.)  Thus, with no underlying constitutional violation, bystander liability fails.  *See Dodson,* 2016 WL 67255, at *3; *Marshall,* 156 F. Supp. 2d at 531.

Moreover, to the extent Plaintiff suggests that Defendant Laws failed to intervene regarding the use of any excessive force while officers were attempting to place Plaintiff in handcuffs, there is no evidence that Defendant Laws observed any such force, or had the opportunity to intervene.  While Defendant Laws was later informed that another officer may have struck Plaintiff in the head during the time officers were trying to restrain Plaintiff, Defendant Laws did not witness this.  (Laws Decl. ¶ 44.)  Rather, Defendant Laws was attempting to gain control of Plaintiff by securing his left arm.  (*Id.* ¶¶ 38-39, 45.)  Similar to Defendant Wolfe, Plaintiff claims Defendant Laws was in position to prevent the use of

28

excessive force against him. (*See* Docket Entry 83 at 9.) Again, the video evidence reflects that matters unfolded rapidly once Plaintiff's vehicle came to a stop. (*See* Ex. A, Video Timestamp at 16:48-17:14; Ex. B, Video Timestamp at 27:28-28:15.) Thus, the record does not indicate that there was a period of time which would provide Defendant Laws a reasonable opportunity to prevent an unlawful strike, if at all, upon Plaintiff. *See Harper*, 2015 WL 6509131, at *14; *Westmoreland*, 267 F. Supp. 2d at 502. Therefore, Defendant Laws should be granted summary judgment on Plaintiff's claim based on the theory of bystander liability.

### C. Defendant Wolfe's Motion to Seal

Defendant Wolfe seeks to seal the medical records of Plaintiff which are filed in support of Defendant Wolfe's Motion for Summary Judgment. (Docket Entry 77.) He argues that these documents "contain sensitive and confidential medical information protected from disclosure pursuant to federal law." (*Id.* at 1.) The motion has been publicly docketed for several months and there has been a reasonable opportunity for interested parties to challenge the matter. Plaintiff has not objected to, joined in, or otherwise responded to the Motion to Seal. Defendant Wolfe has filed a checklist pursuant to the Local Rules. *See* M.D.N.C. LR 5.4.

Because Plaintiff's medical records are submitted in connection with Defendant Wolfe's Motion for Summary Judgment, the documents are judicial records, and the right of access is protected under the First Amendment. *Doe v. Pub. Citizen*, 749 F.3d 246, 267-68 (4th Cir. 2014). Therefore, granting the Motion to Seal is proper only if a compelling government interest is shown, and the sealing of the documents is narrowly tailored to meet the compelling interest. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (citations omitted)). In considering the issue, the Court must:

> [W]eigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). A motion to seal cannot rest on conclusory allegations but must "present specific reasons in support of its position." *Id.* at 575.

With respect to Plaintiff's medical records, Defendant Wolfe asserts that they must be kept private because the documents "contain sensitive and confidential medical information protected from disclosure pursuant to federal law." (Docket Entry 77 at 1.) This statement is the entirety of the explanation presented by Defendant Wolfe to support sealing the records. The Court recognizes there is a government interest in protecting medical information. *See Fulp v. Columbiana Hi Tech, LLC*, No. 1:16-CV-1169, 2018 WL 1027159, at *10 (M.D.N.C. Feb. 21, 2018). However, there is no blanket exception to the First Amendment right to access for medical records, and this Court is more likely to grant a motion to seal medical records when the records contain a wide breadth of confidential information than when the records are limited and entirely relevant to the case. *Compare Fulp*, 2018 WL 1027159, at *10 *with Musgrove v. Moore*, No. 1:19-CV-164, 2022 WL 19977408, at *2 (M.D.N.C. Apr. 20, 2022).

Here, the Court cannot find that sealing Plaintiff's medical records serves the compelling government interest of protecting the confidentiality of his medical information and is narrowly tailored to achieve that purpose. The submitted medical records are limited to information relevant to the injuries and treatment alleged in the Amended Complaint. (*See* Am. Compl. at 4-5.) Moreover, some of the information Defendant Wolfe seeks to protect

30

has already been disclosed in Plaintiff's arguments in opposition to the Motion for Summary Judgment. (*See* Docket Entry 82-2.) Therefore, any privacy concerns are diminished. *See Hatch v. Demayo*, No. 1:16CV925, 2020 WL 6161533, at *13 (M.D.N.C. Oct. 21, 2020) ("[T]he proposed redactions . . . encompass publicly disclosed information, negating the justification for sealing."); *Garey v. James S. Farrin, P.C.*, No. 1:16CV542, 2020 WL 5211851, at *7 (M.D.N.C. Sept. 1, 2020) ("Once announced to the world, the information lost its secret characteristic.") (internal quotations, citation and alteration omitted). Consequently, the undersigned cannot find the need to seal the medical records has been shown to be compelling, and orders that Defendant Wolfe's motion to seal the medical records be denied.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's "Notice of Defendant's Non-Compliance in Discovery and Motion to Enforce Discovery" (Docket Entry 70) be **DENIED** as moot to the extent any further discovery is sought.

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal (Docket Entry 77) is **DENIED**. The Court directs the Clerk to unseal the records filed at Docket Entry 76.

**IT IS HEREBY RECOMMENDED** that Defendants B. Laws and M.G. Wolfe's Motions for Summary Judgment (Docket Entries 71, 74) be **GRANTED**, Plaintiff's "Motion for Leave to Amend Complaint to Conform to Evidence and to Identify and to Clarify Unto Matter of Fact" (Docket Entry 90) be **DENIED**, and this action be dismissed with prejudice.

_____/s/  Joe L. Webster_____
United States Magistrate Judge

December 4, 2025